### COMMONWEALTH *vs.* CHARLES J. HADLEY.

When a person is indicted on the Rev. Sts. *c.* 47, §§ 1, 2, for presuming to be a common seller of spiritous liquor, and also for selling spiritous liquor in a single instance, to be used in or about his house or other buildings, without being first duly licensed as an innholder or common victualler, and is proved to have done the acts charged in the indictment, he is liable to the penalties imposed by those sections, although he was not the owner nor lessee of the building in which the sales were effected, and was merely a hired agent or bar-tender, without any interest in the profit of the sales, and acted in the presence and under the control of his employer; unless his employer was duly licensed as an innholder or common victualler.

SHAW, C. J. The present case, which comes before the court upon exceptions, presents a question of great importance, affecting the administration of the license laws of this Commonwealth. The defendant was indicted upon the §§ 1 and 2 of *c.* 47 of the revised statutes; and by a general verdict was convicted on both. Exceptions were taken to the directions of the judge before whom the indictment was tried in the municipal court. It appears by the bill of exceptions, that evidence was introduced in support of the indictment, tending to show sales of spiritous liquors to be used in a certain shop, which sales were effected therein by the defendant. On this proof the public prosecutor relied to prove the sale by the defendant, as charged in the indictment.

The bill of exceptions then states that "the defendant

offered evidence to show that the premises in which the sales were effected were not leased to him; that he was not the proprietor nor owner thereof; that he was merely a hired agent, having no interest in the profits, and acting in the presence and under the control of his employer; and he contended, that to support the indictment, the government must show that the spiritous liquor was to be used in *his* house, or other building, and that if the defendant was a mere bar-tender or hired agent, he was not liable under the statute." The judge declined so to direct the jury, but directed them "that such evidence could not be a sufficient defence under the statute, and that if the jury believed that sales were effected by the defendant in the manner before stated, in the house of another as a hired agent or bar-tender, he was liable under the statute."

The court are of opinion that these directions were right. The evidence first offered on the part of the prosecutor constituted a *primâ facie* case to support the indictment. The Rev. Sts. *c.* 47, provide, in § 1, that no person shall presume to be a common seller of wine, brandy, &c. unless first licensed as an innholder or common victualler. Sect. 2 provides, that if any person shall sell any spiritous liquor, to be used in or about his house or other buildings, without being duly licensed, he shall forfeit, &c. Any person incurs the penalty of the first section, who habitually sells to persons indiscriminately, although he does not profess to be or appear to exercise the vocation of an innholder or common victualler. *Commonwealth* v. *Pearson,* 3 Met. 449. Any person incurs the penalty of the second section, by selling any quantity, in a particular instance, to be used in his house. *Commonwealth* v. *Thurlow,* 24 Pick. 374. When, therefore, it was shown that the defendant was making sales of the prohibited article, in a shop adapted for the purpose, to be used on the premises, he was thereby doing acts implying that he claimed and had possession and control of the article sold, and also, that he had such actual and uncontrolled possession, occupation or use of the shop and place of sale and

consumption, as were necessary and sufficient to accomplish the act which the law expressly prohibits. Unless, therefore, something further were shown by way of justification or excuse, the defendant must be convicted. The true question therefore is, whether the evidence offered by the defendant, if it had been admitted, showing that the premises were not his own, but that he acted as the agent and under the authority of another person, without showing that such person was licensed, would constitute such excuse or justification.

Then we are brought to the question of construction, if indeed there be room for construction, of those words of the statute, " any person who shall sell." It appears to us that one who offers an article for sale, either upon the application of the purchaser or otherwise, and who, when the offer is accepted, delivers the article in pursuance of the offer, does " sell " or make a sale, according to the ordinary sense and meaning of that term. It would seem strange and contradictory, to maintain that one who sells goods on commission, or as the factor, agent or salesman of another, does not sell them. The argument assumes that a sale must be construed to be a contract by which the owner of property alienates it and transfers his title to another. But this is a very limited view of the subject. It is not less a sale, and even a valid sale, when made by the authority of the owner. So, the naked possession of property, however obtained, is some evidence of title ; the holder may make a sale *de facto*, which can only be defeated by one having a higher title, and which may be ratified by the assent of the owner. The statute prohibits all sales by unlicensed persons, as well sales *de facto* as sales by an owner, and therefore the case is within the words of the statute.

But it is equally within the spirit of the statute. In construing an act of the legislature, as in construing every other instrument, we are to look at the entire act, and every provision and clause in it, in order to ascertain the meaning and intent. And although the same latitude of construction is not allowed in criminal prosecutions as in civil suits, still

the subject matter is not to be overlooked. The language of the statute is to be so construed, when it reasonably can be, as to promote, rather than defeat the obvious purposes of the legislature. Now, in reading this statute, it is impossible not to perceive that the plain and governing purpose of the stat- ute is to restrain and prevent the disorders, breaches of the peace, riot, pauperism and crime, which would arise from the too free use and too easy mode of obtaining intoxicating liquor in small quantities, and to accomplish this by prohibit- ing the indiscriminate sale of it, by disorderly, unsuitable and unlicensed persons. The contemplated mischiefs arising from the actual sales would not be less, although the conduct of the seller should also be unlawful in other respects; as when he has obtained the property by finding, and converted it to his own use, or taken it tortiously by an act of trespass, or actually stolen it. Would a shop opened by an unlicensed person for the indiscriminate sale of spiritous liquors be less a nuisance because it is also a receptacle of stolen goods? or because the liquor actually sold in it has been stolen? I shall not be understood to intimate, that stealing or receiving stolen goods, or goods obtained unlawfully, would be punish- able under this statute, as a substantive offence; but only that the actual sale of intoxicating liquor is not the less within the mischiefs, and the express prohibition of the statute, be- cause the subject of the sale has come unlawfully to the pos- session of the seller.

The construction contended for by the defendant, by which the actual seller should exempt himself from the penalty of the law, by showing that he sold for the use and benefit, and by the authority of another person, would let in all the mischiefs intended to be prevented by the statute. A person residing out of the State and beyond the jurisdiction of its laws, by taking the lease of shops, and employing selling agents and bar-keepers, might wholly defeat the salutary objects of the law.

It is then urged, *secondly*, as an excuse for the defendant, that he offered to show that he was a hired agent, having no

interest in the profits, and acting in the presence of and under the control of his employer. As to his being an agent, the considerations already stated apply to it. As to his acting in the presence of his employer, we think that circumstance would make no difference, if the defendant was the ostensible actor in the sale ; because one who sells for another, although in his presence, does yet sell ; and the law fixes the penalty upon him who does the act. We are to understand, in the present case, that the sale was actually made by the defendant; otherwise, he would not have been convicted by the jury. If the employer should expressly or tacitly command, direct or instigate him to do it, both might be liable ; for it is a general rule of law, in cases of tort, that when two or more are guilty, as actors or participators, of one and the same offence, each is severally liable to the penalty, and either may be severally prosecuted for it. But the command of the master will afford no justification or excuse to the servant making the sale, because it is an unlawful command, which he is not bound to obey, and for the doing of which he can have no indemnity from the employer. These points are familiar, and are well stated in the authorities cited in the argument. Thus it is stated in 1 Bl. Com. 429, 430, "if the servant commit a trespass by the command or encouragement of his master, the master shall be guilty of it, though the servant is not thereby excused, for he is only to obey his master in matters that are honest and lawful." So in 2 Dane Ab. 316, " the command of a superior to an inferior to commit a tort excuses the latter in no case but that of a wife. Such inferior, as servant, is bound to perform only the lawful commands of his superior ; and the inferior person must know, too, when he does an injury, and if he has to pay for it, he has no remedy against his master, except he deceives him." *Perkins* v. *Smith*, Sayer, 40, and 1 Wils. 328.

Taken in connexion with the established maxim, that ignorance of the law excuses no one from the penalties of its violation, it seems to follow as a necessary consequence, that a salesman or bar-keeper cannot excuse himself by showing

that he did the act by the order, or in the presence of his employer. Whether if the owner, being on the spot, should direct a wife, apprentice or servant, to draw or pour out the liquor, or to deliver it, or even to receive payment for it, the subordinate would be liable, is a question which we are not called upon to decide, and which must depend much on the circumstances of particular cases. It might give rise to a question of fact, whether the act done by the subordinate would amount to an actual sale. At all events, the principal, being actively and ostensibly engaged in the transaction, would be unquestionably amenable to the law ; and this consideration would render the question of the liability of the subordinate of less practical importance to the due execution of the law.

But where one acts as an agent under a general authority to sell for account of another, we are of opinion that sales of liquor made by him are equally opposed to the letter and spirit of the law, as if he were selling his own property, on his own account, and for his own profit.

It is urged, *thirdly,* as an argument against this view of the law, that if correct, every bar-keeper and salesman must himself be licensed, or he would subject himself to the penalties of the law, which could not have been contemplated by the legislature. But we think this is not a sound conclusion from the premises. An innkeeper or retailer has a *lawful authority,* under his license, to sell spiritous liquors under certain restrictions, at a place designated. One may do lawful acts by an agent, and the maxim *qui facit per alium facit per se* makes them, in legal contemplation, his own ; and his license will authorize him to employ persons under him, and will be their justification. This right must, of course, have its reasonable limits. We do not mean to intimate that one can make a general assignment of his license, because the law contemplates a personal trust ; but that he may authorize others to act with and under him, in executing the powers granted to him by the license. All, therefore, that an agent or bar-keeper has to do, in order to secure an immunity from

Commonwealth *v.* Hadley.

the penalties of the law, is, not to obtain a license himself, but to be well assured that his employer has one.

A *fourth* argument against the construction which we have adopted is drawn from that provision of the statute which makes the penalty to depend on selling liquor, " to be used in or about *his* house or other buildings." The argument seems to be founded on the consideration, that the seller of spirit must prohibit the purchaser from using it on the premises, and for that purpose must have such an ownership or possession of the place as to enable him legally to enforce his proprietary right. But this is not the idea suggested by the statute. It is not the using of it on the premises which makes the sale penal, but the purpose for which it is sold. The act of the seller is complete when he has made the sale ; and the question whether it was sold for the purpose of being used on the premises must be judged from the declaration and conduct of the purchaser at the time, his previous conduct and habits, and all the circumstances of the case, from which the understanding of the parties can, in general, be safely inferred. But if a retailer should sell liquor to any one under an honest belief, founded on the obvious circumstances, that it was to be carried away, and the purchaser should nevertheless drink it on the premises, against the will of the seller, it is difficult to see what legal remedy the seller could have, or how his title to the possession of the premises could make any difference. The words " his house," construed with reference to the subject matter, seem to designate the place where he sells or carries on the business of selling liquor. The act of selling, and the control and possession of the article sold, at the place of sale, indicate an actual possession or claim of possession, on the part of the seller, and the terms " his house or other buildings " indicate the extent of the premises in which he has or claims to have possession, for any purpose connected with the use of spiritous liquors. If, therefore, a man should get possession of premises wrongfully, as by forcible entry and detainer, or by trespass or disseizin, and should there sell spiritous liquors to be used on the premises thus obtained,

they would be sold, we think, to be used in *his* house, within the meaning of the statute, and he would incur the penalty.

*Exceptions overruled.*

*C. G. Davis*, for the defendant.

*S. D. Parker*, for the Commonwealth.